# SUMMONS
## COURT OF COMMON PLEAS
## LAKE COUNTY OHIO

BRIAN FABINIAK

        Plaintiff

    VS.

                             Case Number: **21CV000209**
                             Judge EUGENE A. LUCCI

WAL MART ASSOCIATES INC

        Defendant

To the following named DEFENDANT(S):

        WAL MART ASSOCIATES INC
        702 SW 8TH STREET
        BENTONVILLE AR 72716

You have been named a Defendant in a complaint filed in the Lake County Court of Common Pleas, Lake County Courthouse, Painesville, Ohio. A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:

        KRISTEN M. KRAUS ESQ
        DWORKEN & BERNSTEIN CO, L. P. A.
        60 SOUTH PARK PLACE
        PAINESVILLE OH 44077

You are hereby summoned and required to do the following:

1.    Within 28 days after service of this Summons upon you, serve a copy of an Answer to the Complaint on the Plaintiff's Attorney or on the Plaintiff, if he/she has no attorney of record;

2.    Within 3 days after you serve the Plaintiff or the Plaintiff's Attorney, file an Answer with your original signature with the Lake County Clerk of Court.

        Calculations of time are exclusive of the day of service.

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

                      Faith Andrews
                      Clerk, Court of Common Pleas
                      Lake County, Ohio
                      25 N. Park Place
                      Painesville OH 44077

                      By *Jessica Tagliarini*
                      Deputy Clerk

February 22, 2021

FEB 2 5 2021
# EXHIBIT A



FILED
2021 FEB 19 PM 2: 11
FAITH ANDREWS
LAKE CO. CLERK OF COURT

## IN THE COURT OF COMMON PLEAS

## LAKE COUNTY, OHIO

BRIAN FABINIAK
8005 Forest Valley Lane
Concord, OH 44077

Plaintiff

vs.

WAL-MART ASSOCIATES, INC.
702 S.W. 8th Street
Bentonville, AR 72716-0135

Defendant

**21CV000209**
**EUGENE A. LUCCI**

)
)
)
)
)
)
)

**COMPLAINT**

**(Jury Demand Endorsed Hereon)**

Now comes Plaintiff, Brian Fabiniak, by and through undersigned counsel, and for his Complaint against Defendant, Wal-Mart Associates, Inc., (hereinafter "Wal-Mart") states as follows:

### PARTIES

1. Plaintiff is a resident of Lake County, Ohio.

2. Plaintiff is an employee as that term is defined in Ohio Revised Code Chapter 4112.

3. Defendant Wal-Mart is a foreign corporation engaged in the business of operating retail stores throughout the country.

4. Defendant Wal-Mart's principal place of business is located in Bentonville, AR at the address set forth in the caption of the Complaint.

5. Defendant Wal-Mart is a corporation authorized to do business in the State of Ohio.

6. Defendant Wal-Mart is an employer as that term is defined in Ohio Revised Code Chapter 4112.

**EXHIBIT A**

7.     As more fully explained herein, Defendant Wal-Mart is liable for the claims set forth herein consistent with Ohio's statutory and common law.

### JURISDICTION AND VENUE

8.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 7 of this Complaint as if fully rewritten herein.

9.     This Court has subject matter jurisdiction over the subject matter of this Complaint.

10.     This Court has personal jurisdiction over Defendant because a substantial part of the conduct giving rise to this Complaint took place in the territorial jurisdiction of this Court and the Defendant conducts business in the territorial jurisdiction of this Court.

11.     This action is properly venued in this court pursuant to Civil Rule 3(C)(3) and (6).

### STATEMENT OF FACTS

12.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 11 of this Complaint as if fully rewritten herein.

13.     Plaintiff began working for Wal-Mart in 1992 at its store in Elyria, Ohio.

14.     Plaintiff was initially hired to work as a full-time bike assembler on the third shift earning Five Dollars and fifty cents ($5.50) per hour.

15.     At the time Plaintiff began working for Defendant Wal-Mart, he was only nineteen (19) years old.

16.     While working as a bike assembler, Plaintiff also attended Lorain County Community College and worked two (2) other part-time jobs.

17.     Plaintiff was soon promoted to a third shift stocking position at the Elyria store.

18.     In approximately 1993, Plaintiff was promoted to the position of Department Manager of the Elyria store.

19.     As Department Manager, Plaintiff ran a small food department and then later managed the Sporting Goods Department.

20.     In approximately 1995, Plaintiff was promoted to the position of Assistant Manager of the Elyria store.

21.     The position of Assistant Manager was Plaintiff's first salaried position and he initially earned a salary of Twenty-Four Thousand Dollars ($24,000.00) per year.



**EXHIBIT A**

22.     Due to the increased responsibilities that came with the position of Assistant Manager, Plaintiff made the decision to stop attending Lorain County Community College so that he could devote his full time and attention to his career.

23.     In approximately 1998, Plaintiff was moved to the position of Assistant Manager of the Brooklyn store.

24.     Shortly thereafter, Plaintiff was promoted to the position of Co-Manager of the Brooklyn store where he earned a salary of approximately Thirty-Five Thousand Dollars ($35,000.00) per year.

25.     Approximately one (1) year later, Plaintiff was transferred to the position of Co-Manager of the North Olmsted store.

26.     Plaintiff's dedication to Wal-Mart was recognized in approximately 2001 when he was promoted to the position of Store Manager of the Eastlake location.

27.     As Store Manager, Plaintiff's salary increased to approximately Fifty Thousand Dollars ($50,000.00) and he became eligible for bonuses.

28.     Plaintiff worked as the Store Manager of the Eastlake location from approximately 2001 to 2005.

29.     Plaintiff's successful efforts as Store Manager of the Eastlake location were recognized and he was given regular salary increases and bonuses.

30.     Plaintiff's dedication, leadership and hard work was again recognized in 2005 when he was selected to open the Super Center located at 6067 North Ridge Road, Madison, Ohio and serve as its Store Manager.

31.     As Manager of the Madison Super Center, Plaintiff was onsite during construction, was solely responsible for the hiring and training of all personnel and worked closely with local government who were initially opposed to the building of the Super Center.

32.     As Manager of the Madison Super Center, Plaintiff was regularly asked to train and export talent to other locations.

33.     Plaintiff worked tirelessly to develop his store's financial success and a strong customer loyalty.

34.     Plaintiff worked to develop strong community relationships, even serving on the Finance Board for the YMCA for several years.

**EXHIBIT A**

35.     Under Plaintiff's direction, the Madison Super Center regularly excelled in the areas of sales, customer feedback and profit.

36.     Under Plaintiff's direction, the Madison Super Center averaged One Hundred Million Dollars ($100,000,000.00) in sales annually.

37.     While serving as Store Manager of the Madison Super Center, Plaintiff earned annual bonuses ranging from Fifty-Five Thousand Dollars ($55,000.00) to One Hundred Fifteen Thousand Dollars ($115,000.00).

38.     For 2020, Plaintiff was on track to super max his bonus given the measure of the store's sales, customer experience and profit.

39.     Had Plaintiff continued on this trajectory and not been terminated, Plaintiff would have earned a bonus equal to one hundred thirty-five percent (135%) of his annual salary.

40.     Plaintiff reported to the Market Manager.

41.     Plaintiff worked under the direction of several different Market Managers during his tenure as Manager of the Madison Super Center.

42.     Plaintiff's Market Manager reviewed his performance on an annual basis and he regularly earned scores of Solid Performer, Meets Expectations or Exceeds Expectations.

43.     In September of 2019, Ed Gregoric took over the position of Market Manager, managing Plaintiff and nine (9) other Store Managers in northeastern Ohio.

44.     After only five (5) months, Gregoric issued Plaintiff his first coaching in his twenty-seven (27) year history with Wal-Mart.

45.     Plaintiff was extremely concerned about the coaching he received and discussed same with both Gregoric and Kelly Mavar, Market Human Resources Manager, during his annual evaluation just a few weeks later.

46.     Plaintiff was assured by both Gregoric and Mavar that he had nothing to worry about and they subsequently proceeded to give him a "Meets Expectations" rating on his annual evaluation.

47.     In the months that followed, the pandemic ensued.

48.     Despite having to develop new attendance policies as a result of the pandemic and dealing with employee absences, Plaintiff's store outperformed all other stores managed by Gregoric.

**EXHIBIT A**

49.     After the February 2020 coaching, Gregoric did not discuss any further performance issues with Plaintiff.

50.     Plaintiff scheduled a vacation from July 18, 2020 through July 26, 2020.

51.     While he was on vacation, Plaintiff learned that on July 23, 2020 Mavar showed up at his store unannounced and held a series of round table discussions with a small group of Plaintiff's associates.

52.     Subsequently, Plaintiff was approached by one of his associates who warned him that Gregoric appeared to be targeting Plaintiff for termination.

53.     On July 25, 2020, Plaintiff received a calendar invite from Gregoric and Mavar scheduling a meeting for July 27th, Plaintiff's twenty-eight (28) year anniversary with the company.

54.     The meeting was subsequently postponed until July 30, 2020.

55.     On July 30, 2020, Plaintiff met with Gregoric and Mavar who presented Plaintiff with a list of issues allegedly raised during their meetings with associates.

56.     Plaintiff was not given the opportunity to provide any thoughts or feedback on the list.

57.     Gregoric escalated Plaintiff's discipline to a red level bypassing all other levels of discipline.

58.     During this meeting, Gregoric specifically told Plaintiff that he was not going to be able to complete all of the things he was assigning him to do.

59.     On August 13, 2020, Plaintiff had a follow up tour with Gregoric and Mavar.

60.     During the tour Gregoric noted improvement in the store.

61.     Gregoric further stated that Plaintiff should fire his Co-Manager Dan Wright who is approximately forty-one (41) years old.

62.     Mavar responded that Wright should only be held accountable since he was only on a level one coaching.

63.     Gregoric responded that if Plaintiff did not fire Wright, Gregoric would fire Plaintiff and then fire Wright himself.

64.     Wright subsequently resigned in lieu of termination.

**EXHIBIT A**

65.     Plaintiff continued to follow up on all of the items on the list presented to him on July 30, 2020; however, he was short four (4) salaried staff members of management and continued to experience employee absences due to the pandemic.

66.     On August 27, 2020, Plaintiff had another tour of his store with Gregoric and Mavar.

67.     During the tour, Gregoric questioned Plaintiff whether the freezer cases had been cleaned.

68.     Plaintiff explained to Gregoric that he had assigned an associate to clean the cases; however, this individual had recently quit.

69.     Plaintiff further explained that he had hired a new associate who was scheduled to start on August 29, 2020.

70.     Plaintiff further explained that several of the cases needed to be reskinned due to their age but that his team had made great progress so far.

71.     As the tour continued, Gregoric noted dust and some spilled milk on the bottom of the dairy cooler.

72.     Gregoric complimented Plaintiff on the condition of the frozen end caps and the chicken bunker.

73.     After the tour, Plaintiff, Gregoric and Mavar proceeded back to the office.

74.     Gregoric then turned to Plaintiff and said that he was being terminated because he did not clean the cases.

75.     Plaintiff explained to Gregoric that much of the work was completed, and the rest of the work was scheduled for completion; however, Plaintiff was dealing with the loss of several staff members including the very recent loss of his Co-Manager Wright.

76.     Gregoric refused to discuss the matter further.

77.     Gregoric demanded Plaintiff's keys and badge and had him immediately escorted off the premises.

78.     Plaintiff pleaded with Gregoric that he be permitted to obtain some of his personal belongings he had accumulated over the past twenty-eight (28) years.

79.     Gregoric refused to allow Plaintiff to do so and rather informed Plaintiff that his personal belongings would be mailed to him.

80.     Plaintiff was escorted out of the store as if he was a criminal.

**EXHIBIT A**

81.     Plaintiff's team members, customers and members of the community continued to inquire why Plaintiff was terminated.

82.     Plaintiff was forty-six (46) years old at the time he was terminated.

83.     Upon information and belief, Plaintiff was the oldest store manager of the ten (10) managers supervised by Gregoric.

84.     Since Plaintiff's termination, he has been replaced by an employee approximately twenty (20) years his junior.

85.     Plaintiff is the fourth (4th) store manager to be either terminated or demoted and replaced by a younger manager at the hands of Gregoric.

## COUNT ONE

### (Age Discrimination)

86.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 85 of this Complaint as if fully rewritten herein.

87.     Plaintiff is in the age group protected by Ohio Revised Code Section 4112.02.

88.     At all times relevant hereto, Plaintiff was meeting or exceeding Defendant's legitimate expectations for his position.

89.     Gregoric issued Plaintiff a coaching in February of 2020 and subsequently disciplined Plaintiff in July 2020 for pretextual reasons as a means to manufacture some legitimate non-discriminatory reasons for his discipline.

90.     The allegations contained in both Plaintiff's initial coaching in February of 2020 and his subsequent discipline in July of 2020 are false and a pretext for unlawful age discrimination.

91.     Defendant has willfully and/or unlawfully discriminated against Plaintiff on the basis of his age in violation of Ohio Revised Code 4112.02.

92.     The conduct of Defendant was intentional and evidences the degree of malice necessary to support an award of punitive damages.

93.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered serious and permanent emotional distress, humiliation, embarrassment, loss of

**EXHIBIT A**

reputation, loss of self esteem, lost wages, lost bonuses, lost income, lost opportunities and other benefits and damages.

94.     As a consequence of Defendant's breaches of law and duty, Plaintiff has suffered and will continue to suffer irreparable injury, the exact nature, extent and amount of which cannot be ascertained at this time.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against Defendant for:

A.     Compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

B.     Punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

C.     Attorneys' fees and costs as provided for under the law;

D.     Pre and Post judgment interest; and

E.     Such other and further relief as this Honorable Court may deem Plaintiff to be entitled.

Respectfully submitted,

KRISTEN M. KRAUS – 0073899 O\R.N.
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Attorney for Plaintiff
kmkraus@dworkenlaw.com

**EXHIBIT A**

### JURY DEMAND

Now comes Plaintiff, by and through counsel, and requests a trial of the within matter by a jury composed of the maximum number of jurors allowed by law.

KRISTEN M. KRAUS - 0073899 O.R.N.
**DWORKEN & BERNSTEIN CO., L.P.A.**
Attorney for Plaintiff
kmkraus@dworkenlaw.com

**EXHIBIT A**

FAITH ANDREWS
CLERK OF COMMON PLEAS COURT
LAKE COUNTY COURT HOUSE, WEST ANNEX
25 N. PARK PLACE
PAINESVILLE, OHIO 44077

# Lake County Common Pleas Court

## ATTENTION ALL PARTIES TO THE CASE

**Whether you are represented by an Attorney or representing yourself in this Legal action, LAKE COUNTY LOCAL COURT RULES require that all participants familiarize themselves with, and follow the requirements of each court.**

**Pre-trial orders and procedures are available on our website at**

**www.lakecountyohio.gov/coc**

**Select DOWNLOADS**

**Scroll to PRE-TRIAL ORDERS**

**Select the appropriate pre-trial order/procedure for YOUR respective case and Judge.**

**If you are unable to access or unclear as to which pre-trial order/procedure applies to you, contact the Office of the Clerk of Courts, New Case Department (440.350.2657) during normal business hours and a copy will be immediately mailed to you.**

FAITH ANDREWS
CLERK OF COMMON PLEAS COURT
LAKE COUNTY COURT HOUSE, WEST ANNEX
25 N. PARK PLACE
PAINESVILLE, OHIO 44077

**EXHIBIT A**



ORIGIN ID:LNNA
FAITH ANDREWS
LAKE COMMON PLEAS
25 NORTH PARK PLACE
PAINESVILLE, OH 44077
UNITED STATES US

(440) 350-2657

SHIP DATE: 22FEB21
ACTWGT: 0.80 LB
CAD: 111040613/WSXI3100

TO

BILL SENDER

**WAL MART ASSOCIATES INC**
**702 SW 8TH STREET**

**BENTONVILLE AR 72716**
(440) 350-2657

INV:
PO:

REF: 21CV000209

DEPT:

FedEx
Express

E

TRK#
0201  **7839 5978 2814**

**SH ROGA**

THU - 25 FEB 4:30P

EXPRESS SAVER

DSR
**72716**

AR-US

TUL

FedEx Express

**EXHIBIT A**