## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **BRIAN FABINIAK,** | **Case No. 1:21-CV-00673** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **WAL-MART STORES EAST, LP,** | **MEMORANDUM OPINION & ORDER** |
| **Defendant.** | |

Currently pending is Defendant Wal-Mart Stores East, LP's ("Defendant" or "Walmart") Motion for Summary Judgment.  (Doc. No. 23.)  Plaintiff Brian Fabiniak ("Fabiniak") filed a Brief in Opposition to Defendant's Motion (Doc. No. 25), to which Defendants replied (Doc. No. 27).  For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

I.      **Facts**

A.      **Fabiniak's Employment History**

In 1992, Plaintiff Brian Fabiniak began working for Walmart.  (Doc. No. 24-1 ("Fabiniak Dep.") at PageID# 186.)  Fabiniak rose up through the ranks during his employment at Walmart, eventually becoming Store Manager of the Walmart Super Center in Madison, Ohio (the "Store") in 2005. (*Id.* at PageID# 186-193.)  Fabiniak remained at Walmart as the Store Manager of the Madison Store until he was terminated on August 27, 2020.  (*Id.* at PageID# 193, 93.)  From July 2019 until Fabiniak's termination, Market Manager Ed Gregorek served as Fabiniak's supervisor.  (*Id.* at PageID# 197-98; Doc. No. 24-5 ("Gregorek Dep.") at PageID# 807-08.)  From 2016 through 2019, Fabiniak was earning over $200,000 in salary and bonuses during his employment at Walmart.  (Doc. No. 25-1 at ¶¶ 2-3 & Exs. A1-A4.)

**B.    Walmart's Relevant Policies and Procedures**

Fabiniak was aware that Walmart had a Discrimination and Harassment Prevention Policy that prohibited discrimination based on an individual's age.  (Fabiniak Dep. at PageID# 199-200.) Fabiniak admits that he did not complain to anyone during his employment at Walmart that he thought he was being treated unfairly because of his age.  (*Id.* at PageID# 203.)

Fabiniak was also aware of Walmart's Disciplinary Action Policy.  (*Id.* at PageID# 203-04.) Under the Policy, there are three color-coded levels of Disciplinary Actions:  First Written/Yellow Action Plan, Second Written/Orange Action Plan, and Third Written/Red Action Plan.  (Doc. No. 24-2 at PageID# 438-440.)  The Disciplinary Action level assigned to an employee's conduct is based on the severity of the conduct and any previous Disciplinary Actions taken against the employee. (*Id.*)    While the Policy states that a level may be skipped, or termination may result if the "unacceptable performance and/or conduct is found to be serious" (*id.*), Fabiniak alleges that disciplinary levels were only skipped in "extreme circumstance[s]" (Fabiniak Dep. at PageID# 205). Once a Disciplinary Action was taken against an employee, the action was active on the employee's record for twelve months.  (Doc. No. 24-2 at PageID# 439.)  Fabiniak acknowledged that under Walmart's Disciplinary Action Policy, if an employee received a Disciplinary Action and the employee's job performance or conduct remained unacceptable, termination could result.  (Fabiniak Dep. at PageID# 209-210.)

**C.    Fabiniak's Performance at Walmart**

From fiscal year 2010 through fiscal year 2020, Fabiniak received yearly employment evaluations with performance ratings of either "Solid Performer" or "Exceeds Expectations."  (Doc. No. 25-1, ¶¶ 4-5 & Exs. A5-A15.)  After one of Gregorek's first tours of the Store in September 2019

2

as Fabiniak's supervisor, however, Gregorek emailed Fabiniak a list of sixteen issues with the Store, including issues related to the Store's cleanliness and standards.  (Gregorek Dep. at PageID# 820-24; Fabiniak Dep. at PageID# 311-12; Doc. No. 25-2 at PageID# 484.)  Fabiniak admitted he received this email.  (Fabiniak Dep. at PageID# 311-12.)

Until February 2020, Fabiniak had only received one disciplinary action during his employment at Walmart.  (Doc. No. 24-2 at PageID# 451-55.)  Then on February 14, 2020, Gregorek issued Fabiniak a Disciplinary Action 1 – Yellow for Violation of Company Policy/Procedures. (Fabiniak Dep. at PageID #240 & Ex. 8.)  Fabiniak had been repeatedly directed to enter at least four weeks of the Store's management schedule into the WIRE management system but had failed to do so.  (*Id.* at PageID# 241.)  Gregorek testified that he discovered that Fabiniak had not worked a weekend in four or five months, even though "it's really important to have the leadership of the store manager in the facility during weekends" as most of Walmart's "business is done on the weekend," only after viewing Fabiniak's handwritten schedule.  (Gregorek Dep. at PageID# 824-28.)  Fabiniak had physically posted the handwritten schedule in the Store but had not entered it into the online system.  (Fabiniak Dep. at PageID# 241-42.)  As a result, Fabiniak was issued the Yellow level discipline.  (*Id.* at PageID# 240.)   The "Observations of Associate's Behavior and/or Performance" section of the Disciplinary Action reads:

> When the management schedules aren't in the system, the Market/Regional Teams do not know what managers are working.  More importantly, all associates have the right to know their schedules at least 3 weeks out to enable them to have work/life balance. It is also very important to have schedules in the system in case of an emergency so that we can know the location and ensure the safety of all associates including the managers.  This is company policy and must be followed consistently.

(Doc. No. 24-2 at PageID# 458.)  After this discipline, Fabiniak entered the schedules into the WIRE system as required.  (Gregorek Dep. at PageID# 869.)

3

Later in February, Gregorek gave Fabiniak his annual performance evaluation with a "Meets Expectations" rating.  (Doc. No. 24-2 at PageID# 447-450.)  In that evaluation, Gregorek noted in the Overall Summary:

> Brian does a [sic] excellent job teaching, training and developing talent within his facility.  Brian is very knowledgeable and passionate about the business, he goes after and solves for [sic] problems in his facility. He has done a [sic] amazing job this year delivering ECOMM metrics both with OGP and GM.  Brian led the market by a long shot with PRESUB, CSAT, OTP and GM wait time.  I would like Brian do [sic] a better job delivering this year in seasonal transitions.

(*Id.* at PageID# 447.)  Gregorek also gave Fabiniak four out of five stars in the "Clean Fast Friendly" category, rating him as "Exceed[ing] Expectations."  (*Id.* at PageID# 447-48.)  In the Future Priorities section, Gregorek stated: "Brian [Fabiniak] must be more receptive to Market direction.  There are times that something may seem that a certain direction has little value, but Brian must trust that we do not ask for items/tasks that aren't necessary."  (*Id.* at PageID# 449.)  Gregorek had been managing Fabiniak for six months at this point and would tour the Store at least once a month.  (Fabiniak Dep. at PageID# 817-18.)

Gregorek and/or Kelene Mavar ("Mavar"), People Operations Lead, then again toured the Store once during the months of March, April, and May 2020, twice in June 2020, and four times in July 2020.  (Doc. No. 24-2 at PageID# 457.)  After Mavar toured the Store on July 5, 2020, she emailed Fabiniak the following, recapping her tour, and noting issues with the Store's cleanliness:

> Nice to speak with you today.  Just a few call outs.  Produce, bakery and meats were filled and looked great.  Front End was well maintained and serving the customers with no waiting.  However, cleaning is a big opportunity in your store.  The only way to break this bad habit is to ensure EVERYONE works 'clean.'  I have attached a PDF doc with examples.  Managers must all be on the same page with clean.
>
> I don't think your management team knows what clean looks like, because they are accepting sub-standard results.  Have a training Tuesday for everybody…all workers…on what clean looks like.  (Jenny would be great at this training.)  Make

4

this your focus for every associate.  They all have to walk around with their eyes open to dirt.  They are stocking shelves and cases that are filthy.  It makes the manager's life so much easier, when we take the time to explain what our expectations are going forward.

Example: the outside of the bunkers.  Associates and managers would probably say that they cleaned the bunkers.  They clean the inside of the bunkers but there is dust on the top of the case and around the bunker is dirty.

If the managers just continue to give direction by notes or over the walkie: the associates will never ever get it right: take them to the places that are dirty and show them the way it should be.

I look forward to my next visit to see big changes in the cleanliness of the store.

(*Id.* at PageID# 459.)  Mavar attached to that email several photographs of the Store, showing Fabiniak areas in which he was performing to standards as well as areas in which he did not meet standards.  (Fabiniak Dep. at PageID# 267-68.)  Fabiniak admitted he received and reviewed those photos after her visit to the Store on July 5, 2020.  (*Id.*)

Additional Store visits were then conducted in July.[1]  (*Id.* at PageID# 275.)  On July 14, 2020, Mavar emailed Gregorek a draft of a Disciplinary Action for Fabiniak due to job performance issues based, among other things, on the Store's lack of cleanliness.  (Doc. No. 24-8 at PageID# 1212-13.)  This email contained a subject line of "Brian Fabiniak Orange DA."  (*Id.*)  It was later determined, however, that the Disciplinary Action should be escalated to a level red.  (Gregorek Dep. at PageID# 889.)

On July 25, 2020, Mavar forwarded her July 5, 2020 email to Fabiniak recapping her tour to her boss, Charles Patterson ("Patterson"), copying Regional General Manager Jay Cordray ("Cordray"), and attaching pictures from the tour.  (Doc. No. 24-2 at PageID# 459.)  In that email,

---

[1] The parties dispute the dates in which the tours took place.  (Fabiniak Dep. at PageID# 252.)

Mavar stated she "was back in the store yesterday for listening sessions; and the cases were still filthy." (*Id.*) Mavar had conducted "listening sessions" at the Store in July 2020 to discuss the Store and the Store's working conditions with the Store's associates. (Doc. No. 24-7 ("Mavar Dep.") at PageID# 1123-27.)

On July 30, 2020, Gregorek then issued Fabiniak a Disciplinary Action 3 – Red for Job Performance/Productivity issues, as previously drafted by Mavar, and the discipline noted the following issues:

> Throughout the mentioned tours the Market Team members have observed consistent breakdown with the following:
> Poor store standards;
> Basic Top Stock standards continues to be a concern – no consistent improvement;
> Backroom and Sales Floor dirty;
> Missing labels,
> Missing pricing,
> Zoning.
> Store is still struggling with process and procedures.

(Doc. No. 24-2 at PageID# 456-57.) Fabiniak admitted to receiving all of that feedback during at least some of the previous tours done by Gregorek and/or Mavar. (Fabiniak Dep. at PageID# 253.) The discipline further noted that the impact of Fabiniak's failures was as follows:

> By [Fabiniak] not ensuring that his Team follow Company expectations; including processes, policies and procedures; We deprive our customers of good service, clean shopping environment and product availability; Associates not working in a clean, safe environment[;] Associates are not at company expectations on performance and standards; not being properly developed to move forward.

(Doc. No. 24-2 at PageID# 458.) And under "Behavior Expected of Associate," Gregorek noted:

> [Fabiniak] is expected to deliver the following on a daily basis: Deliver a clean, safe store for the customers and associates on a daily basis. Execute basic company processes such as Top Stock, Availability process, time-bound tasks. Store must be zoned and ready for the customers daily. Clean, neat and organized backroom daily so the store can execute company processes.

6

(*Id.*)

Gregorek and Mavar discussed this Disciplinary Action with Fabiniak on July 30, 2020 and provided Fabiniak with a Coaching for Success plan, which required Fabiniak to complete the following:

- Show immediate improvement on **basic Top Stock standards**. This improvement must be consistent and continuous: **Check up date: 08-13-20**
- **Sales Floor and Backroom must be cleaned and kept clean continuously and consistently**; this includes all refrigerated cases (includes BR and sales floor), coolers, shelving, floors, and parking area. **Get well date: 8-13-20**
- **Teach, train and develop associates** to work the Walmart processes and procedures. Immediate and continuous improvement in the expectation. **Check up date 8-13-20**
- **Show Leadership that reflects Walmart culture**; supports the associates; and keeps the store to Walmart standards. Immediate and continuous improvement expected. **Check up date 8-13-20**.

(*Id.* at PageID# 468; Fabiniak Dep. at PageID# 277.)  Fabiniak provided the following response to this Disciplinary Action and Coaching for Success plan:

I am obviously dedicated to the company spending 28 years in this family. I will improve my performance, I am a believer that I will improve and become the leader I am being asked to be.  Thank you for taking the time to explain and answer questions I have. Please know I am embarrassed that this coaching has taken place.

(Doc. No. 24-2 at PageID# 458; Fabiniak Dep. at PageID# 257-59.)

Gregorek or Mavar then toured the Store again on August 13, 2020.[2]  (Fabiniak Dep. at PageID# 277-78; Doc. No. 24-2 at PageID# 483.)  During this tour, Gregorek indicated that there were still areas that needed to be improved and cleaned.  (Fabiniak Dep. at PageID# 277-79.) Gregorek informed Fabiniak that they would tour again in two weeks, "covering the same bullet points from the coaching from success form." (Doc. No. 24-2 at PageID# 483.)  Then, on August 27,

---

[2] The parties dispute who conducted this tour.  (Fabiniak Dep. at PageID# 277-78.)

2020, Gregorek and Mavar again toured the Store.  Gregorek and Mavar noted that there were still areas that were not cleaned, and Fabiniak admitted this was true.  (Fabiniak Dep. at PageID# 279-281, 288-291.)  Gregorek and Mavar then went to the Store's management office with Fabiniak and terminated Fabiniak's employment with Walmart.  (*Id.* at PageID# 280-81.)

Mavar then emailed Patterson and Cordray on September 2, 2020, with her recap of Fabiniak's termination, which addressed the following issues:

> On Thursday, August 27, 2020 MM Ed and I toured store 3608 to conduct our 2nd follow-up on Brian's Coaching for Success.  Brian showed some progress on the first follow up (8-13-20) & we gave him 2 more weeks with direction to get everything to standard.  We toured the following areas with Brian; the fresh and frozen cases; consumable aisle; GM aisles; action alleys for clean, zoning, missing labels and pricing.  During the tour Ed would point out the things that were below standard and ask Brian about it.  At the beginning of the tour, Brian said that the cleaning was complete; however, there was little to no progress since 8-13-20.  Brian previously had stated that he assigned one person for the cleaning; however, that person voluntarily quit.  He also said that He was still working on getting it clean…"it was really dirty and it takes time."  Ed continuously pointed out missing labels, missing or wrong pricing, and missing or damaged fast track, clean problems.
>
> When we finished the tour, Brian, Ed and I went into the Ad Office to discuss the tour.  Ed asked Brian what he thought about his store; Brian said that he thought he made progress.  Ed stated that after 1 month since his DA and Coaching for Success the store is still below standard and at this time, I am terminating your employment.

(Doc. No. 24-2 at PageID# 473.)

At the time of Fabiniak's termination, he was 46 years old and was allegedly the oldest Store Manager in Market 209.[3]  (Doc. No. 25-3 at PageID# 1572.)  Fabiniak was then replaced by Jordan Tant, who was 26 years old at the time of his hiring.  (*Id.*)

---

[3] Stacy Morrison, Store Manager of Mentor as of December 24, 2020, has the same birth year as Fabiniak's, which means she may have been the oldest Store Manager in Market 209.  (Doc. No. 25-3 at PageID# 1573.)  Defendant does not address this issue.

## II.     Procedural History

Fabiniak filed this matter on February 19, 2021 in the Lake County Court of Common Pleas. (Doc. No. 1-2.)  Defendant removed the matter to this Court on March 25, 2021.  (Doc. No. 1.)  On April 7, 2021, Fabiniak filed his First Amended Complaint asserting one claim against Walmart for unlawful age discrimination in contravention of Ohio Revised Code § 4112.02.  (Doc. No. 6, ¶¶ 86-94.)

On December 17, 2021, Defendant filed a Motion for Summary Judgment ("Defendant's Motion").  (Doc. No. 23.)  On January 14, 2022, Fabiniak filed a Brief in Opposition to Defendant's Motion (Doc. No. 25), to which Defendant replied on January 27, 2022.  (Doc. No. 27.)  Thus, Defendant's Motion is now ripe for a decision.

## III.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alteration in original).  A fact is "material . . . only if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc*., 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may [also] meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc*., 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

## IV.  Analysis

In Count One, Fabiniak alleges that Defendant discriminated against him on the basis of age when it terminated his employment on August 27, 2020, in violation of Ohio law. (Doc. No. 15 at ¶¶ 86-94.) Defendant argues that it is entitled to summary judgment in its favor, asserting Fabiniak cannot establish that Walmart's legitimate non-discriminatory reason for his termination was pretext for discrimination. (Doc. No. 23 at 10.)

Ohio Revised Code section 4112.02, provides that it shall be an unlawful discriminatory practice "[f]or any employer, because of the . . . age . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  Ohio Rev. Code § 4112.02(A).  Age discrimination claims brought under Ohio law "are 'analyzed under the same standards as federal claims brought under the [ADEA].'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Wharton v. Gorman–Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009)) (alteration in original).

 "An employee can establish an age discrimination case by either direct or circumstantial evidence." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).  Here, Fabiniak relies on circumstantial evidence of age discrimination.[4]  Claims relying on indirect evidence of age discrimination are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014).  Once the plaintiff produces "'evidence from which a reasonable jury could conclude that he or she established a *prima facie* case of discrimination[,]' . . . the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Willard*, 952 F.3d at 807 (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007)).  The plaintiff must then rebut the proffered reason by producing "evidence from [] which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination."  *Id.* (quoting *Blair*, 505 F.3d at 524); *see also*

---

[4] While Fabiniak alleges that "[t]here is ample evidence in the record, both direct and circumstantial, of discriminatory animus on the part of Gregorek towards Plaintiff," Fabiniak fails to identify what evidence is, in fact, direct evidence. (Doc. No. 25 at 15.)  Thus, the Court will analyze Fabiniak's claims as relying upon circumstantial evidence.

11

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  As the Sixth Circuit recently explained, "[a]t the pretext stage, the plaintiff's burden of production 'merges' with his ultimate burden of persuasion to show that age discrimination was the but-for cause of his termination."  *Willard*, 952 F.3d at 807 (quoting *Provenzano*, 663 F.3d at 812).

Defendant concedes that Fabiniak has established a *prima facie* case of age discrimination. (Doc. No. 23 at 10.)  The burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for Fabiniak's termination.  *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 (6th Cir. 1990) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).  According to Defendant, Fabiniak was terminated due to "his refusal to take accountability for the Store, including ensuring that associates were upholding Walmart standards with respect to cleaning, zoning, and stocking, and failing to lead the Store, while on an active discipline, and despite repeatedly being advised to do so by his Market Manager on multiple occasions."  (Doc No. 23 at 10-11.)  Fabiniak concedes that Defendant has proffered a legitimate, nondiscriminatory reason for his termination.  (Doc. No. 25 at 13.)

"When an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for [his] termination is pretextual." *Blizzard*, 698 F.3d at 285.  Fabiniak contends that Defendant's reasons were pretext for unlawful age discrimination.  (Doc. No. 25 at 14-17.)  At this stage, Fabiniak "has the burden to produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [him].'"  *Blizzard*, 698 F.3d at 285 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)) (first alteration in original).  Fabiniak "can accomplish this by proving '(1) that the proffered

12

reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [his discharge], or (3) that they were *insufficient* to motivate discharge.'"  *Id.* (quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)) (emphasis and alteration in original).  This "three-part test need not be applied rigidly."  *Id.*  As the Sixth Circuit has explained:

> Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?  This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is.  One can distill the inquiry into a number of component parts, and it can be useful to do so.  But that should not cause one to lose sight of the fact that at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.");  *Forrester,* 453 F.3d at 417 ("If [the proffered reason] is not the true ground, the employer may still be innocent of discrimination; he may for example have lied to conceal a reason that was discreditable but not discriminatory.") (citations omitted).  At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.  If so, her prima facie case is sufficient to support an inference of discrimination at trial.  *Hicks,* 509 U.S. at 511, 113 S. Ct. 2742.  But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation.  *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Chen*, 580 F.3d at 400, n.4; *see also Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012).

Here, Fabiniak first argues that Defendant's stated reason is pretextual because it did not actually motivate his discharge.  (Doc. No. 25 at 14-16.)  To show that the reasons offered did not "actually motivate" Defendant's decision, Fabiniak must "present evidence 'which tend[s] to prove that an illegal motivation was *more* likely than that offered by defendant.'"  *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 20 (6th Cir. 2007) (quoting *Manzer v. Diamond Shamrock Chems. Co.*,

13

29 F.3d 1078, 1084 (6th Cir.1994)) (emphasis and alteration in original). Fabiniak argues that the following circumstantial evidence reflects a discriminatory animus on the part of Gregorek towards Fabiniak and therefore establishes pretext:

- "Gregorek kept an ongoing narrative of faultfinding and nitpicking with [Fabiniak's] work";

- Gregorek set Fabiniak up to fail as he allegedly told Fabiniak during their July 30, 2020 meeting that he did not know how Fabiniak was going to accomplish "all of these goals";

- Victoria Haney ("Haney"), an employee who worked under Fabiniak from September 2018 until his termination, "only had positive comments to make about [Fabiniak] as a manager which is in stark contrast to her experience with [her] younger manager," who still remains manager at another Walmart store;

- Gregorek previously told Fabiniak that he could fire him "on the spot just for 'top stock standards'";

- Gregorek seemed disengaged during conversations with Fabiniak, while "he seemed more engaged when interacting with younger Store Managers";

- Gregorek previously "shook his head 'no' and expressed dismay over the managers' anniversary dates that were displayed on the office wall";

- Gregorek had previously told Fabiniak to terminate his co-manager, Dan Wright, who was also in his forties as Gregorek was allegedly "not happy with Wright's performance and that he had been with the store too long";

- Gregorek took "hundreds of weekly man hours allotted to the Store" despite knowing of the Store's "severe understaffing at the time and the effect it had on [Fabiniak's] ability to improve store conditions"; and

- Gregorek skipped a step in Walmart's disciplinary protocol when he issued Fabiniak a yellow and then a red disciplinary action.

(Doc. No. 25.) Defendant refutes that this evidence establishes pretext. (Doc. No. 27.) The Court will address the relevant evidence, in turn.

14

First, the Court agrees with Defendant that the evidence regarding Gregorek's documentation of and complaints regarding Fabiniak's work demonstrates Walmart's honest belief that Fabiniak "exhibited numerous performance issues and failed to avail himself of multiple opportunities to improve prior to termination." (Doc. No. 27 at 5.)

As this Court has previously explained:

> Under the "honest belief" rule "[w]hen an employer reasonably and honestly **relies on particularized facts** in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir.2009) (internal quotation marks omitted). "An employer's pre-termination investigation need not be perfect in order to pass muster under the rule." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). "The key inquiry is instead '**whether the employer made a reasonably informed and considered decision before taking an adverse employment action**.'" *Id.* (quoting *Seeger*, 681 F.3d at 285).

*Immormino v. Lake Hosp. Sys., Inc.*, 127 F. Supp. 3d 829, 837 (N.D. Ohio 2015) (emphasis added).

Here, there is ample evidence in the record that Defendant relied on particularized facts in arriving at its decision to terminate Fabiniak's employment—facts which Fabiniak agrees existed. There is also ample evidence that Defendant conducted multiple pre-termination investigations and made a "reasonably informed and considered decision." *Id.* Defendant toured the Store and discussed the Store's issues with cleanliness with Fabiniak on multiple occasions while also giving Fabiniak multiple chances to improve. While Fabiniak now describes Gregorek's complaints and criticisms of Fabiniak's work as being on a "witch hunt" against Fabiniak, Fabiniak admitted that: (1) he had not been entering the management schedules as required when he received his Yellow Disciplinary Action (Fabiniak Dep. at PageID# 241-42); (2) there were still areas of the Store that had not been clean during his Red Disciplinary Action (*id.* at PageID# 279-281, 288-291); (3) he had been put on notice of both of those issues before being disciplined for such (*id.* at PageID# 241, 275-79); and (4)

there were still issues regarding the Store's cleanliness during the tour immediately before his termination (*id.* at PageID# 279-281, 288-291). Accordingly, the Court agrees that Defendant "made a reasonably informed and considered decision" before terminating Fabiniak. *See Immormino*, 127 F. Supp. 3d at 837; *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("[Plaintiff's] disagreement with [Defendant's] honest business judgment regarding his work does not create sufficient evidence of pretext in the face of the substantial evidence that [Defendant] had a reasonable basis to be dissatisfied.").

Second, with regard to alleged age-related comments made by Gregorek, including the comment that Fabiniak's co-manager had been an employee at the store too long and expressing dismay at managers' anniversary dates, the Court holds that these comments do not constitute circumstantial evidence of pretext. Fabiniak relies on *Hannon v. Louisiana-Pacific Corp.*, 784 F. App'x 444, 450 (6th Cir. 2019) for the proposition that "discriminatory remarks may serve as evidence of pretext because they indicate the presence of animus toward a protected group." *Id.* (quoting *Vincent v. Brewer Co.*, 514 F.3d 489, 498 (6th Cir. 2007)). While that is true, the statements at issue in *Hannon* were overtly ageist. For example, the plaintiff's supervisor in *Hannon* referred to the plaintiff as "grandma" and "little old lady" on multiple occasions, made a "teasing reference to post-menopausal issues," and asked plaintiff about her retirement plans. *Id.* at 448. The statements at issue here, on the other hand, are easily distinguishable and merely "ambiguous because they could just as easily refer to tenure," rather than age. *See Blizzard*, 698 F.3d at 287. Further, just like in *Blizzard*, "the discriminatory remarks were unrelated to the decision to dismiss [Fabiniak] from [his] employment," and thus, "they do not constitute evidence of discrimination." *Id.* Therefore, Gregorek's comments do not establish pretext.

16

Third, Gregorek's decision to skip the orange level discipline in this case does not establish pretext for two reasons.  First, Walmart's policies specifically permitted skipping a level of discipline or terminating an employee if the "unacceptable performance and/or conduct is found to be serious." (Fabiniak Dep. at Ex. 3, PageID# 438-440.)  Disciplinary policies that give a great "amount of subjective discretion" to managers have been found to be "easily susceptible to manipulation in order to mask . . . the true reasons for making the [employment] decision." *Thompson v. Chase Bankcard Servs., Inc.*, 737 F. Supp. 2d 860, 877 (S.D. Ohio 2010) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 394 (6th Cir. 2008)).  However, the disciplinary policy at issue here requires the conduct to be "serious" before skipping a level of discipline or terminating an employee, unlike the policy in *Thompson* that allowed for "immediate termination . . . at any time without prior coaching or counseling if, *in the manager's judgment*, the situation calls for such action." *See id.*  Further, while the decision to skip a level would have ultimately been Gregorek's decision, he discussed the issue with Mavar and the regional team.  (Gregorek Dep. at PageID# 889.)  Meanwhile the decision to terminate Fabiniak had to be approved by Cordray beforehand.  (Mavar Dep. at PageID# 1166-67.)  Thus, Gregorek did not have full subjective discretion here.  Furthermore, while Gregorek decided to skip a level of discipline, he continued to give Fabiniak opportunities to improve before and after doing so, including by developing a Coaching for Success plan and then extending that plan an additional two weeks when Fabiniak again failed to meet the required standards.  (Fabiniak Dep. at PageID# 277-79; Doc. No. 24-2 at PageID# 468, 483.)

Second, even if Walmart had failed to follow its own procedures, as Defendant points out, such evidence "is generally insufficient to support a finding of pretext." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005); *see also Bailey v. Oakwood Healthcare, Inc.*, 732 F.

17

App'x 360, 365 (6th Cir. 2018) ("[A]n employer's failure to follow its own internal disciplinary procedures may be probative evidence, but [] more is required to create a genuine fact question on pretext."); *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839 (6th Cir. 2015) (holding that because "the record demonstrates that [the plaintiff] received numerous verbal and written warnings about her failure to meet performance expectations," the Court would not analyze whether the defendant "failed to follow the organization's progressive disciplinary procedures"). Here, there is ample evidence that Defendant chose to follow its own procedure in skipping a disciplinary level when it deemed Fabiniak's conduct serious enough to do so, after giving Fabiniak multiple warnings regarding his need to improve performance and opportunities to do so, and such action does not evidence pretext.

All other evidence presented by Fabiniak alleging pretext in this context is also unavailing. While Fabiniak claims that Gregorek displayed personal animus towards Fabiniak and took "hundreds of weekly man hours allotted to the Store . . . despite Gregorek's knowledge of Plaintiff's severe understaffing at the time and the effect it had on Plaintiff's ability to improve store conditions," Fabiniak has presented no evidence that such animus or such staffing decisions "was in any way related to [Fabiniak's] age or in any way reflected age animus."[5] *See Brennan*, 237 F. App'x at 21. "Without this, it is simply a personal distaste, and wholly insufficient to support an age bias claim." *Id.*

Fabiniak also argues that because Haney's positive experience under Fabiniak's management is in stark contrast to her negative experience with a younger manager in another Walmart store in

---

[5] Further, Mavar denied that the Store was "struggling" any more than the other stores during the pandemic (Mavar Dep. at PageID# 1111), and Gregorek stated the Store was "overstaffed in the market to cover the call-offs" and that any hours he allotted to other stores in the Market were "additional hours" allocated by the company to divide as necessary (Gregorek Dep. at PageID# 876-77, 937-38).

18

the Market, pretext exists.[6] (Doc. No. 25 at 12, 15.) The Court disagrees. According to Haney, during her experience working for the younger manager of Walmart's Eastlake location, Ryan Gibson ("Gibson"), she "had no leadership," she witnessed Gibson use "foul language, throw[] objects, berat[e]," and retaliate against her, and the Madison Store was "beautiful compared to Eastlake." (Doc. No. 25-2 ("Haney Dep.") at PageID# 1547, 1554-55.) Defendant argues that a subordinate's opinion regarding Fabiniak's work ethic is "not probative of the pretext analysis." (Doc. No. 27 at 6.)

"To be a 'similarly situated' employee, the comparative employee 'must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Brown v. The Ohio State Univ.*, 616 F. Supp. 2d 740, 756 (S.D. Ohio 2009) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)). Fabiniak cites no evidence, nor case law, that establishes that Gibson is a "similarly situated" employee to Fabiniak under this standard. In fact, Fabiniak dedicates only two sentences to this argument. Here, Fabiniak cannot establish that Gibson "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish . . . their employer's treatment of them for it." *See id.* Just as the plaintiff in *Brown* assumed she was the only employee reprimanded for her conduct, but "ha[d] absolutely no idea" whether other employees were reprimanded for the

---

[6] In the fact section of his Motion, Fabiniak also discusses Haney's testimony regarding the positive comments she had about Fabiniak as a manager. (Doc. No. 25 at 10-11.) Fabiniak provides no case law or argument as to how the positive comments of a subordinate establish that Defendant's proffered reason for termination did not actually motivate his discharge. In response, Defendant cites *Blizzard*, 698 F.3d at 285 to support its argument that a subordinate's opinion is not probative to establish pretext. (Doc. No. 27 at 6.) The Sixth Circuit in *Blizzard* held that a subordinate's positive opinion regarding the plaintiff's work was not sufficient evidence to show that the defendant's proffered reason for termination had no basis in fact. *Blizzard*, 698 F.3d at 285. Here, Fabiniak does not argue that Defendant's reason for termination had no basis in fact, thus, the Court will not address such an argument here.

same conduct, *id.* at 59, the only evidence Fabiniak presents regarding Gibson's conduct is through Haney's deposition testimony, and Haney admitted that she does not know if Gibson was ever disciplined for his conduct (Haney Dep. at PageID# 1555).  "[S]peculation ungrounded in fact is insufficient to establish pretext."  *Brown*, 616 F. Supp. 2d at 758.  Accordingly, Fabiniak has failed to provide evidence that Gibson was a similarly situated employee.

The Court thus finds that Fabiniak has failed to demonstrate that there is a genuine issue of material fact that the reasons offered for terminating Fabiniak "did not actually motivate" his discharge.  *See Blizzard*, 698 F.3d at 285.

Fabiniak next argues that he can establish pretext by showing that the stated legitimate nondiscriminatory reason given by Walmart for terminating his employment was insufficient to motivate his termination.  (Doc. No. 25 at 16-17.)  Without citing any case law, Fabiniak argues that because Fabiniak was "striving to improve the condition of the [S]tore" and because Defendant made "multiple statements to him that he would not lose his job over these issues if he was actively improving," the reasons for his termination were insufficient.  (*Id.*)  The Court is not persuaded.

"[A] plaintiff 'cannot show pretext by raising questions about the soundness of the employer's business judgment.'"  *Brown*, 616 F. Supp. 2d at 755 (quoting *Degrazia v. Ermanco, Inc.*, 1992 WL 88864, at *2 (6th Cir. May 1, 1992)).  Indeed, "[i]t is irrelevant whether . . . there were some improvements in some areas during [his] leadership, when there were other legitimate reasons" for his termination.  *Id.*  Such is the case here.  Defendant gave Fabiniak multiple chances to improve his performance, and when Fabiniak failed to do so to Defendant's satisfaction, Defendant used its business judgment to terminate Fabiniak.  While Fabiniak may disagree with Defendant's decision, that opinion does not evidence pretext.  *See e.g.*, *Wright v. Sears, Roebuck & Co.*, 81 F. App'x 37,

20

43 (6th Cir. 2003) (holding that meeting or even exceeding certain standards set by the company will not guarantee that an employee, especially a manager, is achieving the overall goals of the company and will not bar an employer from legitimately terminating such an employee for other legitimate non-discriminatory reasons).

The Court finds that Fabiniak has failed to demonstrate that there is a genuine issue of material fact that the reason offered by Defendant was insufficient to explain Fabiniak's termination. *See Imwalle*, 515 F.3d at 545.

The undisputed evidence demonstrates that Defendant fired Fabiniak for the stated reason Defendant proffered and that reason was not pretextual.  Therefore, Defendant is entitled to summary judgment on Fabiniak's age discrimination claim.

**V.      Conclusion**

For all the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 23) is GRANTED.

**IT IS SO ORDERED.**


    *s/Pamela A. Barker*

PAMELA A. BARKER

Date: June 29, 2022                  U. S. DISTRICT JUDGE